```
                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. JOSE NEGRON-SOSTRE, *et al.*, **Defendants**. | **CIVIL NO.** 08-310 (FAB) |

**MEMORANDUM AND FINDINGS OF FACT**

BESOSA, District Judge.

On March 8, 2011, defendant Jose Negron-Sostre filed a motion to supplement the record on appeal and requesting an evidentiary hearing, alleging that his right to a public trial was denied by the district court's alleged exclusion of his family members during the *voir dire* process held before trial started. (Docket No. 3655.) Defendants Luis Rodriguez-Sostre, Wilfredo Rosario-Camacho, Josue Perez-Mercado, and Ramon Maysonet-Soler joined defendant Negron's motion. On July 6, 2011, this Court held an evidentiary hearing to supplement the record to determine whether the public was excluded from the courtroom during the jury selection process in violation of the defendants' Sixth Amendment rights to a public trial. (Docket No. 3831.) The Court summarizes the testimony heard at the hearing, and makes its findings of fact.

Civil No. 08-310 (FAB)                                                    2

## I.   Summary of Testimony at Hearing

Jury selection occurred on January 20, 2010 at the trial of the five defendants.  (Docket No. 3831 at 28-29.)  Carlos Sierra ("Sierra") was the Courtroom Security Officer ("CSO") assigned to the courtroom that day.  Id. at 16.  He was present in court during *voir dire*.  Id.  There were seventy five jurors called for the jury *venire*, that is to say, "75 jurors were actually present on the date the jury selection began."  Id. at 21.  Sierra testified that his role as a CSO requires him to be inside the courtroom during the *voir dire* process, with his attention focused more to the front of the courtroom (alongside the bench and the judge's entrance) than in the back.  Id. at 23-24.  He further testified that he was not standing outside the door which leads from the courthouse lobby into the courtroom at any point during the jury selection process. Id.

Maribel Rodriguez ("Rodriguez"), defendant Rosario's sister, was present in the courthouse on the day of jury selection.  Id. at 28.  Ms. Rodriguez testified that she attempted to enter the courtroom while jurors were entering and leaving the courtroom, and was told by an officer of the court that family members were not allowed "until we're finished."  Id. at 29-30.  Ms. Rodriguez testified that she did not try to enter the courtroom again that day, nor did anyone tell her that she could enter the courtroom. Id. at 31.  She also testified that at one point during the day,

Civil No. 08-310 (FAB)                                                3

"someone was blocking the glass of the doors [to the courtroom] with paper . . . so we couldn't see inside."  Id. at 32.  Ms. Rodriguez also testified that she alerted her brother's attorney, Mr. Francisco Dolz, that she was not allowed to enter the courtroom on the day of jury selection, and he told her not to worry, because it was the "procedure" that "family members are not allowed until we finish with the selection of the jury."  Id. at 40.

Zuheily Otero-Gonzelez ("Otero"), a friend of defendant Rosario, was present in the courthouse on the day of jury selection in Rosario's trial.  Id. at 44.  Otero first testified that she asked a deputy U.S. marshal, who was standing outside the courtroom, if she could enter the courtroom for jury selection, to which she was told that she could not go in.  Id. at 45.  She then testified that it was CSO Sierra, whom she then identified as a courtroom security officer, who told her she could not come into the courtroom, and who was the same individual who covered the windows of the door leading to the courtroom with paper.  Id. at 46.  Otero further testified that she spoke with Rosario's attorney, Mr. Dolz, on the morning of the jury selection, to ask him if she could enter the courtroom, and was notified by Mr. Dolz that she could not go in because that was the practice of the court in Puerto Rico.  Id. at 50.

Civil No. 08-310 (FAB)                                                    4

Damaris Gonzalez-Guitard ("Gonzalez"), defendant Rodriguez-Sostre's wife, was present in the courthouse on the day of jury selection. Id. at 52-53. She testified that she attempted to enter the courtroom once, but was told she could not enter. Id. at 54. Gonzalez affirmed that it was the courtroom security officer [Sierra] who denied her admission into the courtroom during jury selection. Id. at 58-59. Her testimony regarding where she and the security officer were standing when she was denied admission was convoluted and contradictory. Id. Gonzalez testified that later during the day of jury selection, she saw white paper put up against the window of the door leading to the courtroom, and gave a physical description of CSO Sierra as the person who placed the papers on the door windows. Id. at 54-55. The sworn statement she submitted, however, contains conflicting information about the dates of the jury selection, and also states that "white typewriter paper was placed on the windows" of the courtroom doors "the following day" after jury selection was done. Id. at 73. Gonzalez never spoke to Rodriguez-Sostre's attorney, Ms. Mariangela Tirado, about not being able to enter the courtroom. Id. at 57.

Suheil Rosa-Nieves ("Rosa"), defendant Maysonet's wife, testified that she was present in the courthouse on the day of jury selection, and that when she tried to peek through the windows of the courtroom, it was CSO Sierra who told her not to do so because

it was not allowed.  Id. at 76-77.  She testified that her husband's attorney, Mr. Alexander Zeno, told her that only the lawyers, prosecutors, defendants, and potential jurors were allowed in the courtroom during the jury selection process.  Id. at 77-78.  She did not ask Mr. Zeno to seek permission from the Court to be let into the courtroom.  Id. at 82.  Rosa stated that in the morning she was able to peek inside the courtroom, but in the afternoon, CSO Sierra covered the courtroom door windows with white paper and locked the doors.  Id. at 78-79.

Miriam Ramos-Grateroles ("Ramos"), defendant Perez-Mercado's attorney, testified that on the date of the *voir dire*, the potential jury members took up the entire courtroom.  Id. at 86.  She testified that family members were "not allowed" in the courtroom because "it has been a practice . . . that during the jury selection, the public, the family members, are not allowed in court."  Tr. at 86.  She told her client and her client's sister that family could not be present during *voir dire*.  Tr. at 86-87.  Ramos testified that she recalled seeing white paper on the door windows.  Tr. at 87.  She also testified that she did not engage in any discussions with any deputy marshal or court officer to make provisions to allow family members to enter the courtroom during *voir dire*, nor did she inform or object to the Court that family was not allowed in during jury selection.  Tr. at 86, 90.  Ramos testified that in her experience as a practicing attorney since

Civil No. 08-310 (FAB)                                                    6

1975, it has been the practice of this district not to allow the public into the courtroom during jury selection. Tr. at 88, 91. She testified that it was not a tactical decision on her part in telling her client's family members that they could not enter the courtroom during jury selection. Tr. at 87. She also stated that there were no family members present inside the courtroom during *voir dire*. Tr. at 96.

Alexander Zeno ("Zeno"), defendant Maysonet's attorney, testified that he did not remember seeing any of defendant Maysonet's family members inside the courtroom on the date of jury selection. Tr. at 98. He testified that he had no recollection of having a conversation either with defendant Maysonet or with his family members concerning their ability to enter the courtroom during jury selection. Tr. at 98-99. Zeno testified that it was his understanding that nobody from the public could enter the courtroom during jury selection. Tr. at 101. He also testified that during the jury selection he did not object or bring to the Court's attention the fact that family members were not being allowed in the courtroom. Tr. at 103. Zeno stated that this was in no way a tactical or strategic decision. Tr. at 103. He stated that when he tried to enter the courtroom, the door was not locked. Tr. at 104.

Ramon Garay-Medina ("Garay"), defendant Negron-Sostre's attorney, testified that on the day of jury selection, family

Civil No. 08-310 (FAB)                                                        7

members were not allowed inside the courtroom. Tr. at 109. He did not raise the matter with his client, nor did he raise it with any deputy marshal or court security officer, because it has been a common practice for many years that the public is not allowed into the courtroom during *voir dire*. Tr. at 109. His decision not to raise the issue with the Court was not a tactical decision, but based upon his belief that it was the practice in this district that family members were not allowed in the courtroom during jury selection. Tr. at 112. Garay also testified that he believed that the doors were "closed", then "clarifying" that he believed they were "locked". Tr. at 110. He testified that on the date of jury selection, the courtroom was full with defendants, marshals, and the potential jurors. Tr. at 113. Garay confirmed that in the afternoon, during jury selection, he asked the Court to "seal" the courtroom because he had noticed that jurors were sometimes entering and leaving the courtroom, and it was unclear whether they had heard the Court's questions during *voir dire*. Tr. at 114-116.

Mariangela Tirado-Vales ("Tirado"), defendant Rodriguez-Sostre's attorney, testified that on the date of jury selection, "all the jurors were inside the court, the defendants were inside the court, and family members were kept outside, they were not permitted into the court" as has been "the usual process in this court." Tr. at 118. She further testified that it was "a full room", and that there were more than 50 potential jurors inside the

courtroom.  Tr. at 118-119.  Tirado testified that in eight or ten other criminal trials she has seen, "family members and public is [sic] not permitted into the court while the jury selection is going on."  Tr. at 118-119.  She testified that she was aware that at some point during the day, family members tried to enter the courtroom and were not allowed to enter, but she does not recall having any discussions with defendant Rodriguez-Sostre or his family about it because she understood it to be the standard operating procedure of the Court.  Tr. at 119-120.  Tirado stated that she did not make an objection to the Court regarding her client's right to a public trial.  Tr. at 125-126.  She further stated that her decision not to object was in no way a strategic decision, but based upon her belief that it was the standard operating procedure in the district to exclude the family from the courtroom during jury selection. Tr. at 125-126.

Francisco Dolz ("Dolz"), defendant Rosario's attorney, testified that he recalled having a conversation with the defendant's sister on the day of jury selection.  Tr. at 130-131.  He testified that no members of defendant Rosario's family or friends were in the courtroom during the jury selection process, and that he believes that the public has never been allowed into the courtroom during jury selection ever since 1975, when he began practicing before this district.  Tr. at 131.  He stated that he did not object to the exclusion of the public during jury selection

because everyone was "used to the public being excluded during jury selection." Tr. at 131. He testified that his lack of objection was not based on a tactical or strategic decision. Tr. at 131. Dolz also testified that he recalled seeing white sheets of paper on the windows of the courtroom doors on the day of jury selection, but did not know who put the sheets up. Tr. at 131-132.

CSO Sierra testified once again, stating that he did not recall locking the courtroom door during the jury selection process. Tr. at 138. He also stated that he did not place pieces of paper on the windows of the courtroom door during jury selection. Tr. at 138-139.

Deputy U.S. Marshal Miguel Portalatin testified that he was in charge of courtroom security during the day of jury selection. Tr. at 140-142. He testified that he received no specific instructions from the Court regarding closing the courtroom, but stated that the courtroom "was completely packed with the jurors", meaning that all the seats were taken by jurors. Tr. at 142, 146. He stated that he did not recall seeing any family members inside the courtroom during jury selection. Tr. at 146. He testified that there were two deputy marshals at the entrance of the courtroom, himself and Deputy Maldonado. Tr. at 142-143. He stated that he recalled having to tell some people who were standing right outside the courtroom to move away from the door. Tr. at 143-144, 147. Portalatin testified that the courtroom door was never locked, and

that the courtroom windows were never blocked with any type of paper. Tr. at 143. He stated that he never gave orders to any court security officer or to any deputy marshal not to let anyone come into the courtroom because there was no space inside the courtroom. Tr. at 144-145. He also never gave any orders to block the glass windows of the courtroom door. Tr. at 145. Portalatin further testified that the CSO is always posted close to the judge's door and the entrance and exit for the jury, because the "personnel in the back area of the courthouse were all marshals and the DSOs." Tr. at 145.

## II. Findings of Fact

1. Jury selection in this case was held on January 20, 2010 in courtroom number 4.[1] Approximately 75 potential jurors were present on that day. Those jurors took up all the available seating in the courtroom. The jury selection process lasted the entire day of January 20, 2010.

2. Deputy U.S. Marshal Portalatin was in charge of courtroom security on that day, and was assisted by Deputy Maldonado and CSO Sierra. The CSO was posted near the judge's door, and the entrance door of the courthouse was manned by deputy marshals and DSOs. The deputy marshal retained sole control over the locking of the courtroom doors, and did not at any point during the jury selection

---

[1] While the transcript reflects conflicting testimony regarding the courtroom used, both parties have stipulated that the jury selection process took place in Courtroom number 4.

process request authority from the Court to lock the courtroom doors or to exclude the public from the courtroom.  The Court finds that the courtroom doors were never locked during the jury selection process and that the public was not excluded from the courtroom due to a Court order or a determination by the deputy marshal in charge.

    3.   Family and friends of the defendants were present at the courthouse on the day of jury selection.  No members of the public entered the courtroom during the jury selection process.  Members of the public, including family and friends of the defendants, attempted to look through the windows of the courtroom door and were told by the marshals to move away from the door.

    4.   In the afternoon on the date of jury selection, attorney Garay, who represented defendant Negron-Sostre, requested the Court to "seal" the courtroom because jurors had been entering and leaving the courtroom, and it was unclear whether they had heard the Court's instructions and *voir dire* questions.

    5.   Neither the Court nor the deputy marshals ordered the courtroom to be closed to the public, or ordered white pieces of paper to be placed on the windows of the courtroom doors at any point during the jury selection process.  CSO Sierra testified that he did not place white pieces of paper on the windows of the courtroom doors.

Civil No. 08-310 (FAB)                                                        12

    6.    Rodriguez and Otero (sister and friend of defendant Rosario) and Gonzalez (wife of defendant Rodriguez-Sostre) testified that they attempted to enter the courtroom on the day of jury selection but were denied entrance.  Rosa (wife of defendant Maysonet) testified that she did not request to enter the courtroom, but was told by her husband's attorney, Mr. Zeno, that she was not allowed to enter the courtroom during jury selection.  Mr. Zeno testified, however, that he had no recollection of this conversation with Rosa.  Rodriguez, Otero, Gonzalez, and Rosa all testified that white paper was put on the windows of the courtroom doors, but there was conflicting testimony among defendants' family members regarding when the windows were blocked and who was responsible for placing the white paper on the courtroom door windows.  The Court determines that based on the testimony of the CSO and Deputy Portalatin, no white paper was ever placed on the windows of the courtroom doors to block them.

    7.    Attorneys Ramos, Garay, Tirado, Zeno and Dolz testified that they were made aware of the public's exclusion from the courtroom during jury selection. None of the defendants' attorneys objected to the Court regarding any exclusion of the family members from the courtroom or asked for arrangements to allow family members to enter the courtroom during the jury selection process. All the attorneys stated that their failure to object was based on a belief that this was a long-standing standard operating procedure

Civil No. 08-310 (FAB)                                                    13

of the district.  No specific evidence was ever presented, however, that demonstrated that this supposed long standing district policy of not allowing the public into the courtroom during *voir dire* was ever followed in this case.  The Court finds that the defendants' attorneys were aware that members of defendants' families did not enter the courtroom, but finds that the failure of the defendants' family members to enter the courtroom was due to the attorneys informing the family members that they could not enter the courtroom during the jury selection process, but not because of any Court Order or determination by the deputy marshal in charge to exclude the public.  Counsel did not object precisely because there was nothing to which object.  There was no Court order or determination by the deputy marshal in charge to exclude the public from the courtroom.

   **IT IS SO ORDERED.**

   San Juan, Puerto Rico, December 30, 2011.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE